IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| IN RE: | : | CHAPTER THIRTEEN |
| --- | --- | --- |
| WAYNE G. LeBLANC and NANCY LUXA-LeBLANC, | : | BANKRUPTCY NO.: 5-06-bk-50762 |
| DEBTORS | : | |
| S.B.R. INVESTMENTS, LTD., | : | {**Nature of Proceeding**: Complaint to Determine Dischargeability of Debt} |
| PLAINTIFF | : | |
| vs. | : | |
| NANCY LUXA-LeBLANC, | : | |
| DEFENDANT | : | **ADVERSARY NO.: 5-06-ap-50213** |

# OPINION

    Susan Scott has dedicated her life to assisting the Aboriginal people of Canada. In following that pursuit, she financially assisted various facilities in support of that population. The Debtor, Nancy Luxa-LeBlanc, had similar interests and found herself sharing various projects with Ms. Scott. A friendship developed based on this common avocation. Both individuals thought that the native population would benefit immensely from the services of an individual learned in both traditional medical skills and the herbal practice common with the Aboriginal people. With this background, LeBlanc made a suggestion that she would attend medical school and return to minister to the population. (Audio Record of 2/21/2008 at 10:37 a.m.) The financial support for such endeavor would be forthcoming from Scott, through her Canadian corporation, S.B.R. Investments, Ltd. (SBR). The total sum of $231,000 Canadian (CAD) was advanced, in increments. With these basic facts, the parties have agreement.

Although LeBlanc did obtain some education with the funds received, it became apparent that she would not obtain a medical degree or, for that matter, return to aid the Aboriginal population. Pursuant to the funding documentation, SBR began demanding a repayment of the funds advanced. LeBlanc responded to that request by suggesting that the funds were gifts from Scott made because of their friendship. A lawsuit by SBR against LeBlanc was interrupted by LeBlanc filing bankruptcy on May 22, 2006.

On October 12, 2006, SBR filed a Proof of Claim for "$231,000 Canadian dollars with interest," attaching various notes evidencing the obligation. SBR also filed a Complaint objecting to the dischargeablity of the "debt," alleging that the monies were obtained through fraud under § 523(a)(2) of the Bankruptcy Code and that the debt was "an educational loan" under § 523(a)(8).

LeBlanc challenges these allegations based on her argument that the funds advanced to her were received from her friend and colleague without consideration or commitment.

The trial on the issue took place on February 21 and 22, 2008. Not only is the dischargeablity of the claim at issue, the parties have placed before the Court the question of the proper date to determine the conversion of the claim from Canadian dollars into United States currency.

While maintaining that the monies given to her by SBR were not loans, LeBlanc testified that Susan Scott had given her gifts in the past and these advancements were no different. While she admittedly signed notes for the advances on no less than six occasions between 1998 and 2000, LeBlanc explains that they were only an accommodation to Susan "for tax purposes." All of the notes indicated that repayment would begin no later than January 1, 2002.

## 11 U.S.C. § 523(a)(2)(A)

The gist of the Complaint alleges that LeBlanc agreed to use loan proceeds from SBR to fund a medical education with which she would minister to the Aboriginal peoples of Manitoba. SBR advances that LeBlanc took these funds on that pretense without ever intending to obtain that education or return to Manitoba for that purpose.

In *In re Homschek*, I reviewed the essential requirements to succeed in a litigation under 11 U.S.C. § 523(a)(2)(A).

> The Supreme Court case of *Field v. Mans* recognized the proposition that 11 U.S.C. § 523(a)(2)(A) can be reviewed in light of the established common law of fraud. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In recognizing that proposition, the courts have generally looked to the enumerated elements of the common law tort cause of action in deceit in Professor Prosser's treatise on torts set forth as follows:
>
> 1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.
>
> 2. Knowledge or belief on the part of the defendant that the representation is false - or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of "scienter."
>
> 3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.
>
> 4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.
>
> 5. Damage to the plaintiff, resulting from such reliance.
>
> William L. Prosser, Handbook of the Law of Torts § 100 (3rd ed.1964).
>
> The burden of establishing an exception to discharge lies with a creditor who must maintain that burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Moreover, exceptions to discharge are interpreted strictly against the creditor and in favor of the debtor. *In re Pelkowski*, 990 F.2d 737, 744 (3rd Cir.1993).

*In re Homschek,* 216 B.R. 748, 751 (Bkrtcy. M.D.Pa. 1998).

With regard to a false representation, the Restatement (Second) of Torts, indicates that:

**One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.**

REST 2d TORTS § 525 (1977)

Comment c. to that section observes that "the state of mind of the maker or of a third person is a misrepresentation if the state of mind in question is otherwise than as represented. Thus, a statement that a particular person, whether the maker of the statement or a third person, is of a particular opinion or has a particular intention is a misrepresentation if the person in question does not hold the opinion or have the intention asserted." REST 2d TORTS § 525 (1977).

There are several reasons why I reject LeBlanc's assertion that these advancements were gifts without preconditions.[1]

First, testimony from Scott indicates that LeBlanc initiated the discussion of securing a loan to attend medical school and returning to the healing clinic with a degree. (Audio Record of 2/21/2008 at 10:37 a.m.) Plaintiff's Exhibits 31, 32, and 33 were submitted as LeBlanc's drafts of these proposals and included methodology for "pay back." LeBlanc signed six different notes and two Letters of Understanding between June 1, 1998 and November 30, 2000. Each note was a simple form promise to pay SBR at an appropriate interest rate with a repayment commencement date specified in 2002. In 2003, LeBlanc contacted Susan Scott and advised that

---

[1] Findings of fact issued herein supplement those made at the conclusion of trial on February 22, 2008.

repayments would begin in the fall of that year. (Plaintiff's Exhibit 53.) A facsimile document, dated March 13, 1998, sent by LeBlanc to Scott refers to Scott and LeBlanc working at the "clinic" together and was referenced by LeBlanc as from "Winnipeg's Most Famous Doctor in Training." (Plaintiff's Exhibit 19.) In an email dated May 8, 1999, LeBlanc references she is grateful for the opportunity to "be able to give back my knowledge to the community and share with the people as you do with all your good work." (Plaintiff's Exhibit 20.) SBR's check of May 30, 2000 in the amount of $32,000 was clearly marked "Loan." (Plaintiff's Exhibit 46.)

On the other hand, LeBlanc's suggestion that these advancements were gifts is totally uncorroborated. There is significant evidentiary support for the counter testimony from Susan Scott and SBR's accountant, Paul Wright, that compels the conclusion the sums advanced were not gifts but loans to LeBlanc. Moreover, based on evidence submitted on the record as to LeBlanc's educational efforts and her use of the funds, I find that LeBlanc had no intention of obtaining a medical degree and returning to the Manitoba medical clinic. I further conclude that this intention was a clear condition, required of LeBlanc, to be eligible for this SBR loan. This condition was the only possible motivation for Scott, as an officer of SBR, to advance such a large sum to her then friend, Nancy Luxa-LeBlanc.

In summary, there was a false representation made by LeBlanc that she would obtain a medical degree and return to Manitoba to practice medicine if Susan Scott, through her corporation, SBR, advanced the money for her education. SBR did, in fact, advance this money, as acknowledged by LeBlanc and that SBR was damaged by this misrepresentation.

On Count I of the Complaint, the Plaintiff must prevail.

**11 U.S.C. § 523(a)(8)**

SBR also maintains that dischargeability of the debt should be denied under the provisions of 11 U.S.C. § 523(a)(8), which bars the discharge of student loans.

In 2005, BAPCPA extended the coverage of this provision to loans that are not insured or guaranteed by a governmental unit or under a program funded by a governmental unit or nonprofit institution. It is this provision under § 523(a)(8)(B) that is in play here. It reads:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt– . . .
>     (8) . . . for– . . .
>         (B) any . . . educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

11 U.S.C.A. § 523

Section 221(d)(1) of the Internal Revenue Code, specifies:

> **(d) Definitions.**--For purposes of this section–
> **(1) Qualified education loan.**--The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses–
> **(A)** which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
> **(B)** which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
> **(C)** which are attributable to education furnished during a period during which the recipient was an eligible student.

26 U.S.C.A. § 221

LeBlanc argues that she cannot be the recipient of an educational loan as defined, because, at all times material, she was a Canadian citizen, and not a "taxpayer" under this Internal Revenue Code.

SBR argues otherwise, positing that resident aliens are required to pay taxes and therefore LeBlanc was a "taxpayer" as that term is understood.

The term "taxpayer" is a defined term under the Internal Revenue Code as "any person subject to any internal revenue tax." 26 U.S.C. § 7701(a)(14). The question as to who is subject to a tax appears to have been answered in *Morse v. United States*, 494 F.2d 876, 880 [33 AFTR 2d 74-1035] (9th Cir. 1974).

> Under this definition it is not necessary that a person actually be liable for the tax; it is sufficient that he is potentially liable for it, even if it is ultimately determined that he in fact owes no tax. Accordingly, *when returns were filed* in Mrs. Morse's name declaring income to her for 1944 and 1945, and making her potentially liable for the tax due on that income, she became a taxpayer within the meaning of the Internal Revenue Code. *(Emphasis mine).)*

*Morse v. U.S.,* 494 F.2d 876, 880 (C.A.Cal. 1974).
In accord, *Smith v. Leonard* 76 A.F.T.R.2d 95-7946, 95-7951 (U.S. District Court, Dist.1994).

The conclusion becomes inescapable that, even though a nonresident alien may be required to file a return under 26 U.S.C. § 6012, he/she will not become a taxpayer under the IRC unless a return is actually filed, regardless of whether a tax is due. In this case, the unrebutted testimony was that the Debtor did not file a United States tax return during this relevant time period (Audio Record of 02/22/2008 at 9:45 AM), and so she could not have been a taxpayer. If she was not a taxpayer, then the loan extended to her could not have qualified under 26 U.S.C. § 221(d) and would not be a student loan under 11 U.S.C. § 523(a)(8).

### Proof of Claim in Canadian Dollars

SBR has filed a proof of claim in this case in the total amount of $231,000 Canadian (CAD), with interest. While no specific objection to that claim was filed, it appears that the spirit of the Federal Rules[2], specifically Federal Rule of Bankruptcy Procedure 3007(b)[3], would

---

[2] "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Federal Rule of Bankruptcy Procedure 1001.

[3] "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection [to proof of claim] in an adversary proceeding." Federal

suggest that the answer to this complaint challenging the liability of the Debtor to SBR, be taken as the equivalent of an objection to the SBR claim.

Section 502(b) mandates the Court to "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition . . . ." Considering the fluctuation of the exchange rate between the date of the original obligation, 1998, and the current date, it is little wonder that the parties have spent considerable legal argument in their briefs as to the controlling date for conversion.[4]

Initially, I will disregard the bankruptcy filing as a factor in conversion. I will presume only that litigation on the foreign notes is taking place in this country, absent bankruptcy.

In analyzing the proper conversion date, I find it helpful to reference § 144 of the Restatement (Second) of Conflict of Laws:

> § 144. Time For Converting Foreign Currency Into Local Currency
>
> **When in a suit for the recovery of money damages the cause of action is governed by the local law of another state, the forum will convert the currency in which recovery would have been granted in the other state into local currency as of the date of the award**.

REST 2d CONFL § 144 (1971)

The Debtor argues that the law of Manitoba should apply, and Manitoba law would convert as of the date of breach based on a number of equitable factors. I will reject that argument for reasons herein set out. I note that a Court of the United States would normally

---

Rule of Bankruptcy Procedure 3007.

[4] For example, as of January 1, 2002, the date the notes were first payable, the exchange rate was approximately .63 U.S. dollar (USD) to one Canadian dollar (CAD). On the bankruptcy filing date of May 22, 2006, a Canadian dollar was worth .89 USD. As of this date, the exchange rate is approximately .83 USD to one CAD. There have been wide fluctuations with the U.S. Dollar almost on a par with the Canadian dollar as late as one year ago.

[K:\Cathy\Opinions-Orders filed 2009\5-06-ap-50213_LeBlanc.pdf]      8

Case 5:06-ap-50213-JJT    Doc 25    Filed 04/17/09    Entered 04/17/09 13:16:44    Desc
                         Main Document         Page 8 of 12

issue judgment in United States dollars. Restatement (Third) of Foreign Relations Law § 823(1) (1987). In utilizing a hypothetical identified in *Comment d.* of the Restatement (Second) of Conflict of Laws § 144, *supra.*, and applying the facts of this case. it is noted that, should the Plaintiff be sued in Canada and obtain a judgment, it would result in an award of $231,000 CAD with interest, which could be converted today to approximately $191,730 USD. If a United States Court is required to use the breach date as the date for converting Canadian dollars to USD, then that same $231,000 award would be converted to $145,530 USD. This is over $45,000 lower based on the happenstance of litigation in a foreign country. By using the award date as the date of conversion, the country of judgment would be a nonfactor since it would be equivalent to the amount of the award in the country of applicable law.

Federal Courts in the exercise of federal jurisdiction, such as bankruptcy, have been said to apply federal law to the issue of the appropriate date of conversion. REST 3d FOREL § 823, Reporters' Notes 2 (1987). Our Supreme Court has distinguished between obligations that arose in the United States, converting foreign currency on the breach date, (*Hicks v. Guiness*, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925)), and obligations arising in a foreign state, in which case the conversion date was the date of filing of the complaint (*Deutsche Bank Filiale Nurnberg v. Humphrey*, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383 (1926)).

The Restatement (Third) of Foreign Relations Law of the United States also points out that conversion should be made in such a way "as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation." REST 3d FOREL § 823(2) (1987). If I were to utilize the relatively weak Canadian dollar at the time of the breach, I certainly would have "rewarded" the Debtor for delaying the award date. Conversely, the

creditor would have lost considerably by reason of the delay in obtaining an award.

While there are a number of compelling reasons not to embrace the breach date in converting the Canadian dollar to USD, the most significant reason is to give literal effect to the language of § 502(b) of the Bankruptcy Code, which makes clear that my responsibility is to convert the proof of claim to USD as of the date of the bankruptcy. That provision does not stop me from converting to USD at an earlier date for cause and calculating what that amount would be when advanced to the petition date. In fact, that is exactly what had happened in *In re MacKay*, where I concluded that the date a foreign judgment was recognized in the United States was the date CAD should be converted to USD. *In re MacKay*, 378 B.R. 448 (Bankr. M.D. Pa. 2007).

My conclusion is that § 502(b) specifically bars the fluctuation of the proof of claim value due to exchange rates in effect post-petition. See, for example, *In re Global Power Equipment Group, Inc.*, 2009 WL 229997 (D.Del., Jan. 29, 2009).

I will determine the amount of the proof of claim by calculating the amount due in Canadian dollars, compute interest and run that number to the petition file date, at which time I will convert CAD into USD for purposes of allowing the proof of claim. The Debtor signed six notes as follows:

| Note | Loan Amt. (CAD) | Date of Loan | Interest Rate |
|---|---|---|---|
| 1 | $80,000.00 | June 1, 1998 | 7 1/2% |
| 2 | $29,000.00 | December 21, 1998 | 7 1/2% |
| 3 | $29,000.00 | June 1, 1999 | 7 1/2% |
| 4 | $29,000.00 | December 13, 1999 | 7 1/2% |
| 5 | $32,000.00 | May 30, 2000 | 7 1/2% |
| 6 | $32,000.00 | November 30, 2000 | 7 1/2% |
| Total | $231,000.00 | | |

If I were to run interest from the due date of each note (January 1, 2002) to the bankruptcy filing date (May 22, 2006), [1602 days], interest accrual would be as follows:

| Note | Loan Amt. (CAD) | Total Interest | Total Loan/Interest |
|---|---|---|---|
| 1 | $80,000.00 | $26,334.25 | $106,334.25 |
| 2 | $29,000.00 | $9,546.16 | $38,546.16 |
| 3 | $29,000.00 | $9,546.16 | $38,546.16 |
| 4 | $29,000.00 | $9,546.16 | $38,546.16 |
| 5 | $32,000.00 | $10,533.70 | $42,533.70 |
| 6 | $32,000.00 | $10,533.70 | $42,533.70 |
| Totals | $231,000.00 | $76,040.13 | $307,040.13 [5] |

---

[5] Simple Loan Daily Interest Calculator at www.csgnetwork.com.

Their total as of the filing date would be $307,040.13 (CAD) which I would convert to USD as of that date to $274,278.95[6]. Under § 502(b), I therefore conclude that the claimant, SBR Investments, Ltd., has an allowed proof of claim in the amount of $274,278.95 USD.

My Order is attached.

Date: April 17, 2009

John J. Thomas, Bankruptcy Judge
(CMS)

*This opinion is electronically signed and filed on the same date.*

---

[6] In the absence of an official Canadian currency exchange rate as of May 22, 2006, the mid-market rate as of May 22, 2006 at Noon Eastern Time was .8933 [www.xe.com].

[K:\Cathy\Opinions-Orders filed 2009\5-06-ap-50213_LeBlanc.pdf] 12